Russell G. Petti, Esq. State Bar No. 137160
LAW OFFICES OF RUSSELL G. PETTI
466 Foothill Blvd., # 389
La Canada, CA 91011
818 952-2168 Telephone
818 952-2186 Facsimile
Rpetti@petti-legal.com E-Mail

Attorneys for Plaintiff Thomas P. Terlecky

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THOMAS P. TERLECKY, | CASE NO: **'14CV0043 CAB NLS** |
| Plaintiff, | COMPLAINT FOR: |
| v. | BREACH OF THE EMPLOYEE RETIREMENT INCOME SECURITY ACT OF 1974; INJUNCTIVE AND DECLARATORY RELIEF; PREJUDGMENT AND POSTJUDGMENT INTEREST; AND ATTORNEYS' FEES' AND COSTS |
| UNITEDHEALTHCARE INSURANCE COMPANY, | |
| Defendant. | |

Plaintiff Thomas P. Terlecky ("Plaintiff") herein sets forth the allegations of his Complaint against UnitedHealthCare Insurance Company dba as UnitedHealthcare of California ("UHC" or "Defendant").

## PARTIES, JURISDICTION AND VENUE

1. This action is brought under 29 U.S.C. §§ 1132(a), (e), (f) and (g) of the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001 *et seq.* (hereinafter "ERISA") as it involves a claim by Plaintiff for employee benefits under an employee benefits plan regulated and governed under ERISA.

2. Jurisdiction is predicated under these code sections as well as 28 U.S.C. § 1331 as this action involves a federal question. This action is brought for the purpose of obtaining benefits under the terms of an ERISA Plan, to clarify and enforce

Plaintiff's rights to benefits under this ERISA Plan, to obtain other equitable relief, including but not limited to, restitution, an injunction ordering UHC to qualify Plaintiff for the receipt of benefits and to pay Plaintiff benefits to which he is entitled. This action also seeks prejudgment and postjudgment interest as well as attorneys' fees and costs.

3. Plaintiff was enrolled in an employer based Medical Plan insured by UHC through a policy of group medical insurance issued by UHC. During the relevant period plaintiff was covered under this Medical Plan. During the relevant period Plaintiff resided in San Diego County, within the Southern District of California. In addition, the denial of health benefits at issue occurred within the Southern District of California.

4. Defendant UHC is a Connecticut corporation with its principal place of business in Hartford, Connecticut. It is authorized to transact and is transacting business in the Southern District of California and can be found in the Southern District of California.

5. Because UHC can be found in this judicial district, and because this claim arose within this judicial district, venue in this judicial district is proper pursuant to 29 USC § 1132 (e)(2).

**STATEMENT OF MATERIAL FACTS**

6. At all times relevant, Mr. Terlecky was a beneficiary of the Medical Plan funded by UHC. UHC was the fiduciary of that Plan, and also funded payment of Plan benefits.

7. UHC's Medical Plan required that all treatment be conducted by physicians or medical providers that were under contract to UHC. UHC would only pay for treatment outside one of these "network providers" where the treatment was for an emergency, or where the treatment could not be obtained from a network provider.

///

8. UHC's Medical Plan required that Mr. Terlecky have a "Primary Care Physician," who would make decisions for it as to whether a treatment Mr. Terlecky wished to undergo was medically necessary under the Plan. If the Primary Care Physician deemed a desired treatment to be not medically necessary then UHC would refuse to pay for the treatment. Under the terms of the Medical Plan Mr. Terlecky's Primary Care Physician was Sharp Rees-Stealy Medical Group ("SRS").

9. Mr. Terlecky had longstanding back problems. In October of 2010 he had a fusion at L3-L4, which was supposed to correct these problems. In a spinal fusion hardware is inserted into the spine to fasten the damaged and pain generating discs to adjacent healthy discs, therefore immobilizing them.

10. The October 2010 fusion was not successful, and the hardware did not properly fuse the spine. Mr. Terlecky underwent a revision in November of 2010, which was also not successful. He underwent a third spinal operation in March of 2011, which involved, again, using hardware in an attempt to stabilize the damaged portions of Mr. Terlecky's spine.

11. It soon became apparent that this surgery also was unsuccessful. Mr. Terlecky continued to suffer from back pain. This pain was sharp and stabbing in nature and radiated down into Mr. Terlecky's legs. Mr. Terlecky's symptoms of pain were unrelenting, and they worsened with walking, standing, bending, climbing stairs, and virtually every other activity.

12. Mr. Terlecky's back problems also resulted in weakness in his legs and an unsteady gait, which would occasionally cause him to fall. He began suffering from incontinence. Mr. Terlecky often could not sleep properly because of his severe pain. He also required continuous use of powerful narcotic drugs to control the pain.

13. At thirty-one years of age this combination of pain, weakness and the required use of narcotics made it impossible for Mr. Terlecky to live anything approaching a normal life. His ability to work, to socialize, or to engage in recreational activities was reduced to almost nothing.

14. Mr. Terlecky sought additional treatment options. However the physicians at SRS did not provide him with any options other than continued use of narcotic medication and other conservative care. Mr. Terlecky kept insisting to his assigned physicians that the status quo was not acceptable and that he required another surgery. He received vague assurances that another surgery could be performed. However, in spite of Mr. Terlecky's continued urging for over a year these assurances never resulted in a scheduled surgery with an SRS physician.

15. Frustrated, Mr. Terlecky sought an opinion from Dr. Rick Delamarter, an out of network physician. Mr. Terlecky met with Dr. Delamarter on August 13, 2012. Dr. Delamarter opined, upon review of Mr. Terlecky's x-rays, that the fusion done at L3-4 had not fused. Mr. Terlecky met again with Dr. Delamarter on November 9, 2012. Dr. Delamarter again opined that there had been no fusion at L3-4, and an operation was needed to remove the old fusion instruments which had failed and attempt to successfully fuse the damaged spinal disc.

16. In addition, Dr. Delamarter opined that a more significant problem might exist at the L5-S1 disc, which might be the real pain generator. He recommended an injection at the L5-S-1 level in order to see if this helped Mr. Terlecky's symptoms. This injection resulted in complete, if very temporary, relief to Mr. Terlecky's symptoms, indicating that surgery was needed at that area as well.

17. On December 25, 2012 Mr. Terlecky met with Dr. Richard Ostrup at SRS. Dr. Ostrup was dismissive of the suggestion that an additional surgery would be helpful. When told that Dr. Delamarter had recommended redoing the fusion at L3-4, Dr. Ostrup wrote that "I am not aware that this surgeon has been able to review the recent CT scan which showed the fusion at L3-4 to be solid." Dr. Ostrup also opined that an injury at L5-S1 did not correlate to Mr. Terlecky's symptoms and that a surgery at that level would not fix anything.

18. Upon review of Mr. Terlecky's records and meeting with him, Dr. Ostrup opined that an additional surgery was unnecessary and would not be helpful:

> [I]n my opinion, I do not feel that his back complaints correlate with his leg symptoms and given his failure to have achieved any significant benefit from 3 pervious surgeries leads me to believe that further surgery at this time is not likely to be helpful.

19. Instead of an additional surgery, Dr. Ostrup counseled that Mr. Terlecky needed a "home exercise program," "other anti-inflammatory agents and possibly some cognitive therapy."

20. On January 8, 2013 Mr. Terlecky went forward with the out of network surgery with Dr. Delamarter. During this surgery Dr. Delamarter was proven right that the previous fusion had failed. When he opened Mr. Telecky's back he observed "gross motion" in the hardware that was supposed to be stabilizing Mr. Terlecky's spine.

21. In fact, contrary to the SRS's physician's opinion that the L3-4 fusion was "solid," it was so loose and unstable that it was easily pulled off of Mr. Terlecky's spine. According to the operating report:

> The outer disk was exposed with a #11 blade and the prosthesis was easily visible. It was quite movable with a Kocher. We then freed the edges up with a small forward angle curette until a forward curette could get inside the inner aspect of the XLIF and it was simply pulled out quite easily.

22. This surgery was a complete success. Follow up consultations reported that Mr. Terlecky was "doing marvelously well." Mr. Terlecky was reported as "walking fine," his incontinence problem was cured, his pain was significantly reduced, and x-rays showed this fusion to be holding.

## FIRST CLAIM FOR RELIEF AGAINST
## UHC FOR PLAN BENEFITS

23. Plaintiff refers to and incorporates by reference paragraphs 1 through 22 as though fully set forth herein.

///

24. Both before and after the January 8, 2013 surgery Mr. Terlecky applied to UHC to approve and pay for the consultations and surgery with Dr. Delamarter and his associated physicians. UHC denied coverage for the consultations and surgery, on the grounds that these were "not medically necessary" because they could be done at SRS.

25. In fact, these treatment could not be obtained at SRS. For over a year SRS refused to schedule another surgery for Mr. Terlecky. Further, at SRS Mr. Terlecky was being told that his fusion was "solid" and that further surgery was unnecessary. This "advice" received from SRS was proven to be wrong, as the January 8th surgery showed that the fusion was not holding and that surgery cured Mr. Terlecky's symptoms.

26. Mr. Terlecky appealed UHC's denial of his claim for health benefits. UHC erroneously and wrongfully continued to uphold its prior determination denying Plaintiff's claim for the treatment.

27. Following the denial of Plaintiff's health care benefits claims by UHC, Plaintiff has exhausted all administrative remedies required under ERISA, and Plaintiff has performed all duties and obligations on his part to be performed in order to be eligible for health care benefits under the Medical Plan.

28. As a proximate result of the aforementioned wrongful conduct of UHC Plaintiff has damages for its failure to reimburse medically necessary services in a total sum to be shown at the time of trial.

29. As a further direct and proximate result of this improper determination regarding Plaintiff's health care benefit claims, Plaintiff in pursuing this action has been required to incur attorneys' costs and fees. Pursuant to 29 USC § 1132 (g)(1), Plaintiff is entitled to have such fees and costs paid by UHC.

///
///
///

## SECOND CLAIM FOR RELIEF AGAINST UHC FOR EQUITABLE RELIEF

30. Plaintiff refers to and incorporates by reference paragraphs 1 through 29 as though fully set forth herein.

31. As a direct and proximate result of UHC's failure to pay health care benefits to Plaintiff, and the resulting injuries and damages sustained by Plaintiff as alleged herein, Plaintiff is entitled to and hereby requests that this Court grant Plaintiff an Order that he is entitled to reimbursement for the costs and expense of the medical services provided to him, pursuant to 29 USC § 1132(a)(3).

## THIRD CLAIM FOR RELIEF AGAINST UHC FOR DECLARATORY RELIEF

32. Plaintiff refers to and incorporates by reference paragraphs 1 through 31 as though fully set forth herein.

33. A controversy now exists between UHC on the one hand and Plaintiff on the other as to whether Plaintiff is entitled to reimbursement for the medical services prescribed for and provided to him. Plaintiff seeks a declaration by this Court that he is entitled to reimbursement for the medical services by UHC.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff prays for relief against UHC as follows:

1. Reimbursement for the medical services prescribed for and provided to Mr. Terlecky, including any and all prejudgment and postjudgment interest;

2. Reimbursement for any additional care prescribed for and provided to Mr. Terlecky for which UHC failed to properly reimburse Plaintiff;

3. For a declaration that Plaintiff is entitled to reimbursement for care provided to her by UHC;

4. For equitable reformation of the Medical Plan, so as to require UHC to compensate Mr. Terlecky for the necessary medical care he received which it refused to provide;

5. For injunctive relief requiring UHC to pay all health care benefits owed to Plaintiff;

6. Pursuant to 29 USC § 1132(g), recovery for all costs and attorneys' fees incurred in pursuing this action;

7. For prejudgment and postjudgment interest as allowed for under ERISA; and

8. For such other and further relief as this court deems just and proper.

Dated: January 5, 2014

**RUSSELL G. PETTI**
The Law Offices of Russell G. Petti

By: ___S/Russell G. Petti___
Russell G. Petti
Attorneys for Plaintiff Thomas Terkecky